UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TANISHA TAYLOR                                    CIVIL ACTION

VERSUS                                            NO. 23-1438

MUTUAL OF OMAHA                                   SECTION M (1)
INSURANCE COMPANY

**ORDER & REASONS**

Before the Court is a motion for partial summary judgment filed by defendant Mutual of

Omaha Insurance Company ("Mutual of Omaha") seeking to establish that plaintiff is not entitled

to statutory penalties or attorney fees under La. R.S. 22:1821(A) or to the policy's auto/pedestrian

accidental death benefit.[1]  Plaintiff Tanisha Taylor responds in opposition,[2] and Mutual of Omaha

replies in further support of its motion.[3]  Having considered the parties' memoranda, the record,

and the applicable law, the Court issues this Order & Reasons granting the motion.

I.      **BACKGROUND**

This matter concerns a claim for benefits on an accidental death insurance policy.  In the

early morning hours of October 22, 2022, Kieron C. Walker, while driving a taxicab owned by

Star Cabs, Inc., without a passenger and presumably on his way home after a long shift, died of

blunt-force injuries sustained in a single-car accident.[4]  At the time of his death, Walker was

insured under an accidental death policy issued by Mutual of Omaha that provides $325,000 of

coverage to Taylor (Walker's romantic partner) as the beneficiary if Walker died as a result of an

---

[1] R. Doc. 24.  Mutual of Omaha also argues that plaintiff is not entitled to the policy's common carrier accidental death benefit.  But plaintiff concedes in her opposition memorandum that the common carrier enhancement does not apply in this case.  R. Doc. 25 at 2.  Therefore, Mutual of Omaha's motion for partial summary judgment is granted as unopposed as to finding that the policy's common carrier accidental death benefit is inapplicable.

[2] R. Doc. 25.

[3] R. Doc. 29.

[4] R. Docs. 1 at 2; 24-6 at 1.

injury.[5]   The policy includes an auto/pedestrian accidental death benefit that provides a 25% enhancement of the policy value if Walker died as a result of an injury sustained "while driving or riding in any *private automobile*."[6]  "*Private automobile*" is defined as "a four-wheeled motor vehicle designed to carry passengers and travel on public streets and highways.   A private automobile does not include a vehicle intended for public transportation or for hire."[7]

After Walker's death, Taylor provided notice and proof of loss to Mutual of Omaha, which included the claim form and death certificate stating that the manner of death was an accident.[8] Mutual of Omaha investigated the claim and denied it because Walker's toxicology report showed that he had tetrahydrocannabinol (THC) and its metabolites in his blood at the time of death.[9]  The policy excludes coverage if the death resulted from the insured's being intoxicated or under the influence of any controlled substance not prescribed by a physician.[10]

Taylor filed this suit against Mutual of Omaha seeking benefits under the policy, including the basic accidental death benefit and the enhanced benefit for auto/pedestrian accidental death, and asserting claims for breach of contract and detrimental reliance.[11]  She also seeks penalties and attorney fees under La. R.S. 22:1821(A) and (B) for Mutual of Omaha's alleged failure to timely pay benefits.[12]

## II.    PENDING MOTION

Mutual of Omaha moves for a partial summary judgment that, as a matter of law, Taylor is not entitled to statutory penalties or attorney fees under La. R.S. 22:1821(A) or to the policy's

---

[5] R. Docs. 1 at 2; 24-3 at 4, 15.
[6] R. Doc. 24-3 at 5 (italics in original), 15.
[7] *Id.* at 4.
[8] R. Doc. 1 at 2.
[9] *Id.* at 3.
[10] R. Doc. 24-3 at 7.
[11] R. Doc. 1 at 1-8.
[12] *Id.* at 6.

auto/pedestrian accidental death benefit.[13]  With respect to La. R.S. 22:1821(A), Mutual of Omaha,

citing the *Louisiana Civil Law Treatise*, *Insurance Law and Practice*, argues that subsection A of

La. R.S. 22:1821 applies to health and accident polices, not claims for accidental death, to which

subsection B applies instead.[14]  Mutual of Omaha also argues that the auto/pedestrian accidental

death benefit does not apply because the taxicab in which Walker died does not fit the policy's

unambiguous definition of "private automobile" as it was owned by a taxicab company and was

intended to carry passengers for hire.[15]

In opposition, Taylor argues that because she has found no Louisiana supreme court case

interpreting La. R.S. 22:1821, this Court must make an *Erie* guess to determine whether the penalty

and attorney fee provisions of subsection A apply to accidental death policies.[16]  Taylor asserts

that, despite the musings of the treatise authors, the more reasonable interpretation of La. R.S.

22:1821 is that the Louisiana "Legislature intended to provide for more time for review and a

greater interest rate for accidental death claims, but did not mean to exempt accidental death claims

from the possibility of penalties and attorneys' fees."[17]  She posits that this reading comports with

the Louisiana Insurance Code as a whole which enforces upon insurers a duty of good faith and

fair dealing in adjusting claims by imposing penalties and attorney fees for an insurer's failures in

this respect.[18]  According to Taylor, there is no reason the legislature would have exempted

accidental death policies from this scheme.[19]  As to the auto/pedestrian accidental death benefit,

Taylor argues that the policy's definition of "private automobile" is ambiguous because it does not

specify whether the automobile had to be intended for hire at the time of the accident and the

---

[13] R. Doc. 24.
[14] R. Doc. 24-9 at 4-6.
[15] *Id.* at 8-10.
[16] R. Doc. 25 at 5-8.
[17] *Id.* at 8-11.
[18] *Id.* at 11-14.
[19] *Id.* at 13-14.

vehicle at issue was not specifically designed for public transportation or to carry passengers for hire.[20]

## III.    LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory

---

[20] *Id.* at 14-15.

allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2).  Such facts must create more than "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

**B. Standard for Interpreting Louisiana Insurance Contracts**

The parties do not dispute that Louisiana law governs the interpretation of the insurance policy at issue.  Under Louisiana law, an insurance policy, like any other contract, is construed according to the general rules of contract interpretation set forth in the Louisiana Civil Code.  *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256-57 (5th Cir. 2022) (citing *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 638 (La. 2007)). "Courts must first consider the parties' intent by examining the words of the policy." *Id.* at 257 (citing *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 589 (La. 2007); La. Civ. Code arts. 2045-2046).  In examining the terms of the policy, "'words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning.'" *Id.* (quoting *Sims*, 956 So. 2d at 589).  "'When the words of an insurance contract are clear and unambiguous and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent.'"  *Id.* (quoting *Gorman v. City of Opelousas*, 148 So. 3d 888, 982 (La. 2014)).  A court cannot exercise "inventive powers to create an ambiguity where none exists or [make] a new contract when the terms express with sufficient clearness the parties' intent." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003).  Thus, clear and unambiguous policy wording that expresses the parties' intent is enforced as written. *Id.*

Conversely, ambiguous policy provisions, including "equivocal provisions seeking to narrow an insurer's obligation," are strictly construed against the insurer and in favor of coverage. *Id.*  However, the strict-construction principle applies only if the ambiguous policy provision is susceptible of more than one reasonable interpretation.  *Id.*  "The determination of whether a

6

contract is clear or ambiguous is a question of law." *Cadwallader*, 848 So. 2d at 580. While the insured has the burden of proving that the circumstances constitute a covered claim, the insurer has the burden of proving that any exclusions apply. *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000).

### C. Louisiana Revised Statute 22:1821

Louisiana Revised Statute 22:1821 (formerly, 22:657), which sets out the penalties for an insurer's failure to timely pay claims made on health and accident policies,[21] provides in pertinent part:

> A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B of this Section, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney fees to be determined by the court. Any court of competent jurisdiction in the parish where the insured lives or has his domicile, excepting a justice of the peace court, shall have jurisdiction to try such cases.

> B. All claims for accidental death arising under the terms of health and accident contracts where such contracts insure against accidental death shall be settled by the insurer within sixty days of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six percent per annum from date of receipt of due proof of death by the insurer until paid.

---

[21] Louisiana law defines "health and accident" policies as "[i]nsurance of human beings against bodily injury, disablement, or death by accident or accidental means, or the expense thereof, or against disablement, or expense resulting from sickness or old age, including insurance wherein the benefits are covered at a higher level when health care is received from a defined network of health care providers, provided, however, that such insurance meets all applicable requirements of Subpart I of Part I of Chapter 2 of this Title, R.S. 22:241 *et seq*., for provision of coverage through designated providers of medical services." La. R.S. 22:47(2)(a). It is undisputed that the policy at issue is an accidental death policy that meets this definition.

Present-day La. R.S. 22:1821 evolved from Act No. 310 of 1910, which provided for double indemnity and attorney fees in the event an insurer failed to timely pay the assured on a claim or loss occasioned by sickness or accident.  That statute provided:

Section 1.  Be it enacted by the General Assembly of the State of Louisiana, That no life, health or accident insurance company shall write policies or contracts of insurance, in this State, insuring any person against loss on account of sickness or accident, wherein payment of or indemnities shall be deferred longer than thirty days from written notice, and proof to the company, by the attending physician, in the form required by the terms of such policy or contract of insurance, informing the company of such sickness or accident, entitling the assured to payment under the terms of such policy or contract.

Section 2.  Be it enacted, etc., That payment by such companies to the assured shall not be delayed for a longer period than thirty days from the due notice and proof of disability, without just and reasonable grounds such as to put a reasonable and prudent business man on his guard.

Section 3.  Be it enacted, etc., That the insurance company guilty of such delay in payment, unless upon just and reasonable grounds, shall pay to the assured, as a penalty, double the amount due under the terms of the policy or contract, during the period of delay, with attorney's fees to be determined by the tribunal before whom suit is instituted.

Section 4.  Be it enacted, etc., That the court of the parish where the claimant lives or h[a]s domicile shall have jurisdiction to try such cases.

Section 5.  Be it enacted, etc., That after notice provided for in Section 1 of this Act, shall have been given, it shall be the duty of the insurance company, thereafter, to make payment every thirty days, to the assured during that part of the period of his disability, covered by such policy or contract of insurance during which the assured is entitled to recovery.

Section 6.  Be it enacted, etc., That any life, health or accident insurance company, in this State, violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof, in addition to the penalty prescribed in Section 2 of this Act, pay a fine of not less than One Hundred and Fifty Dollars nor more than Five Hundred Dollars, at the discretion of the court, for the first offense, and upon conviction of a second offense shall have its license to do business in this State revoked.

Section 7.  Be it enacted, etc., That all laws or parts of laws contrary to or in conflict herewith are hereby repealed.

1910 La. Acts No. 310.

In 1924, the Louisiana supreme court held that the double indemnity and attorney fees provisions of Act No. 310, which were "punitory" (*i.e.,* penal) and to be "strictly construed," did not apply when a beneficiary sought to recover on an accidental death policy. *Canal-Com. Tr. & Sav. Bank v. Emp.'s Liab. Assurance Corp.*, 155 La. 720, 730, 99 So. 542, 545 (1924). The court reasoned that the statute's "express terms" provided that penalties and attorney fees were recoverable only for an insurer's late payment of claims asserted by *assureds* for losses caused by sickness or accident, and not for late payment of claims brought by *beneficiaries* for accidental death. *Id.* The Louisiana supreme court and Louisiana intermediate appellate courts consistently applied this principle of law throughout the 1920s, 1930s, and 1940s. *See Brown v. Cont'l Cas. Co.*, 161 La. 229, 239, 108 So. 464, 467 (1926) (holding that the double indemnity and attorney fee provisions of Act No. 310 were "not applicable to a case where a beneficiary named in a policy sue[d] for indemnity for death of the insured"); *Michel v. London & Lancashire Indem. Co. of Am.*, 162 La. 160, 161, 110 So. 186, 186 (1926) (same); *Braxton v. Unity Indus. Life Ins. Co.*, 14 La. App. 435, 437, 131 So. 629, 630 (1930) ("double indemnity and attorney's fees authorized by Act No. 310 … are only recoverable by the insured or his legal representative and not by the beneficiary"); *Harding v. Metro. Life Ins. Co.*, 188 So. 177, 185 (La. App. 1939) ("Act No. 310 … is applicable only in cases of illness and accident and not where suit is for the death of the person insured."); *Grigsby v. First Nat'l Life Ins. Co.*, 7 So. 2d 742, 744 (La. App. 1942) ("The penalty and attorney's fees authorized by Act No. 310 of 1910 can be imposed only in certain cases of illness and accident, the provisions of that statute not being applicable where the suit is for the death of the person insured."). Citing many of these cases, a Louisiana-law scholar of yore noted that Act No. 310 of 1910 "'applie[d] only to cases where indemnity [was] sought for illness

9

or disability and [did] not apply where indemnity [was] sought for death."  2 DART'S LOUISIANA GENERAL STATUTES § 4108, *quoted in Brackman v. Nat'l Life & Accident Ins. Co.*, 5 So. 2d 565, 571 (La. App. 1942) (holding that plaintiff-beneficiary was "not entitled to the penalty provided in certain cases by Act No. 310 of 1910" where suit was brought for insured-husband's accidental death).

Act No. 310 of 1910 underwent its first evolution in 1948 with the enactment of Act No. 195, which codified Louisiana's insurance laws into an Insurance Code.[22]  The Insurance Code's § 14.47, which constituted the successor to Act No. 310 of 1910, provided:

> All claims arising under the terms of health and accident contracts issued in this State shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist.  The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments.  Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court.  The District Court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases.

1948 La. Acts No. 195 (adopting § 14.47 of the Insurance Code).  Section 14.46 of the Code, also adopted in 1948, provided:

> All death claims arising under policies of insurance issued or delivered within this State shall be settled by the insurer within sixty days from the date of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount shall bear interest at the rate of six per cent per annum from date of receipt of due proof of death by the insurer until paid.

---

[22] *Louisiana Legislation of 1948,* 9 LA. L. REV. 1, 82 (1948).  This commentary on the 1948 legislation reinforces the distinction drawn by the cases between the payment provisions for accidental death claims ("All death claims must be paid within sixty days after receipt of due proof of death, subject to an interest rate of six per cent per annum upon failure to do so.") and those for health and accident claims ("Claims arising under health and accident contracts must be paid within thirty days from receipt of due proof of the claim, subject to double benefit payments and attorney's fees upon failure to do so.").  *Id.* at 90.

The wording of these provisions was left unchanged in 1958 when § 14.47 was recodified as La. R.S. 22:657, and § 14.46 as La. R.S. 22:656, with the amendment and reenactment of chapters 1 and 2 of title 22 of the Louisiana Revised Statutes of 1950.  1958 La. Acts No. 125.

The 1960 amendment to title 22 (the Insurance Code) transformed the statute into its current incarnation.  It designated the then-existing text of § 657 as subsection A, added a subsection B relating to accidental death claims patterned after the text of § 656, and inserted the reference to subsection B into subsection A.  1960 La. Acts No. 287, § 1.  The legislature's historical and intentional distinction between death claims and those for health and accident, and its separation of these distinct claims into subsections A (health and accident) and B (accidental death), demonstrates that it did not intend for the double indemnity penalty and attorney fee provisions applicable to health and accident policies to apply to accidental death policies.

Thereafter, in 1965, the Louisiana supreme court, considering a claim for a lump-sum payment on an accidental injury policy, concluded that the double indemnity penalty and attorney fee provisions of La. R.S. 22:657(A) for late payment of claims were intended to apply to small claims (*e.g.,* hospital, medical) and monthly disability payments, and not to lump-sum claims. *Harmon v. Lumbermens Mut. Cas. Co.*, 247 La. 263, 282-84, 170 So. 2d 646, 652-53 (1965).  The court stated that La. R.S. 22:657 provides for two separate penalties, a 100% penalty in subsection A and a 6% penalty in subsection B.  *Id.* at 283.  The court then explained:

> A reading of Section A of LSA-R.S. 22:657 … clearly shows that the Legislature intended that this section be applicable to small claims (hospital, medical, etc.) and monthly disability payments.  Such intent is expressed in the sentence, 'The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payment.'  Immediately following the preceding sentence is the 100% Penalty provision.  LSA-R.S. 22:657 expresses no intent to award a 100% Penalty on a lump sum ….

11

*Id.* at 284.  In 1975, the Louisiana supreme court, this time considering a claim for accidental death

benefits, held that "claims for accidental death arising under health and accident policies are

governed by subsection B of R.S. 22:657 (which allows only a 6% Penalty per annum and makes

no provision for attorney's fees)."  *Lea v. St. Paul Fire & Marine Ins. Co.*, 306 So. 2d 740, 744-

45 (La. 1975); *see also Moore v. Cent. Am Life Ins. Co.,* 535 So. 2d 773, 779 (La. App. 1988)

(holding likewise on a claim for accidental death).  To complete the legislative history, in 2008, as

part of the legislature's reenactment of the Insurance Code under the direction of the Louisiana

Law Institute, La. R.S. 22:657 was renumbered and redesignated as La. R.S. 22:1821.  2008 La.

Acts No. 415, § 1.[23]

> Contemporary Louisiana-law scholars summarize the relevant statute as follows:
>
> *Payment and Penalty.*  La. R.S. 22:1821(A) requires payment for health and accident claims not more than 30 days "from the date upon which written notice and proof of claim, in the form required by the policy are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist."  Also, disability payments must be made every 30 days during the time the payments are due.  Failure to pay timely subjects the insurer to a penalty of "double the amount of the health and accident benefits due" plus reasonable attorney fees.  This provision has been interpreted to mean that the insured is entitled to recover the benefits due, plus a like amount as the penalty.
>
> *Accidental Death Benefits*.  La. R.S. 22:1821(A) is not applicable to accidental death benefits due under health and accident insurance.  Instead, La. R.S. 22:1821(B) provides that with respect to accidental death benefits, the payment period is 60 days from due proof of death and failure to pay timely without just cause subjects the insurer [to] the penalty of 6% per annum. …  There is no provision for attorney fees.

15 WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON, III, LOUISIANA CIVIL LAW TREATISE,

INSURANCE LAW AND PRACTICE § 11:20, at 1135-36 (4th ed. 2022) (footnotes omitted).  Discussing

---

[23] The decision in *Fendley v. American Heritage Life Insurance Co.,* 2016 WL 6892438 (E.D. La. Nov. 23, 2016), is consistent with this long line of jurisprudence, holding that a case removed to federal court had to be remanded to state court for lack of a sufficient amount in controversy to support diversity jurisdiction because the defendant was unable to establish that the penalties and attorney fee provisions of La. R.S. 22:1821(A), rather than the provisions of La. R.S. 22:1821(B), applied to plaintiff's accidental death claim.

*Harmon* and citing *Lea*, the commentators explain further that "[i]f the legislature disagreed with [the Louisiana supreme court's] interpretation [of La. R.S. 22:1821], it has certainly never said so. There have been no relevant amendments to the statute since the *Harmon* decision." *Id.* § 11:21, at 1138. Citing *Brown*, *Michel*, *Harding*, and *Brackman* to draw a similar conclusion, another modern insurance law treatise states that "where the statutory penalty is authorized only with respect to contracts indemnifying the insured in cases of illness or accident, there can be no recovery of the statutory penalty in an action on an accident policy for death." 14A Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, Couch on Insurance § 204:78 (3d ed. 2023).

The legislative and jurisprudential history of La. R.S. 22:1821 establishes beyond peradventure that Taylor, as the beneficiary of an accidental death policy, is not entitled to the double indemnity penalty and attorney fees afforded by § 1821(A). Rather, her claim is subject to the 60-day payment period and 6% penalty set for accidental death claims in § 1821(B). Since the 1920s, Louisiana courts have consistently held that the double indemnity and attorney fee provisions of this statute (including all its historical antecedents) apply only to payments to insureds on health and accident policies, and not to the claims of beneficiaries for accidental death. Because the Louisiana supreme court has repeatedly spoken on this issue, this Court need not make an "*Erie* guess" as to how that court would rule. Accordingly, this Court holds that Taylor, as a matter of law, is not entitled to avail herself of the double indemnity penalty and attorney fee provisions of La. R.S. 22:1821(A), and therefore it grants Mutual of Omaha's motion for partial summary judgment in this respect.

**D.  The Auto/Pedestrian Accidental Death Benefit**

The accidental death policy at issue includes an "auto/pedestrian accidental death benefit," which provides an enhanced benefit of an additional 25% of the policy value if Walker died as a result of an injury sustained "while driving or riding in any *private automobile*."[24]  "*Private automobile*" is defined by the policy as "a four-wheeled motor vehicle designed to carry passengers and travel on public streets and highways," but it "does not include a vehicle intended for public transportation or for hire."[25]

Taylor argues that the phrase "intended for hire" is ambiguous.[26]  She contends that the term may not apply because the taxicab was off duty – that is, not out for hire – at the time of the accident and the vehicle itself was not specifically designed to be used for hire.[27]  However, the plain and ordinary meaning of the words "intended for hire" belies her argument.  A lay person reading the policy's definition of "private automobile," as a whole, would understand that a taxicab owned by a taxicab company is generally intended to carry passengers for hire, regardless of the car's design, and therefore is not a "private automobile" as defined by the policy.  This interpretation leads to no absurd consequences.  To be sure, Taylor's effort to cabin the exclusion to the actual use of the vehicle "at the time of the accident" would require the Court to graft this phrase – consisting of words that does appear in the policy – into the definition.  This is not allowed under the prevailing rules for interpreting insurance contracts in Louisiana.

Indeed, in the context of automobile insurance, courts have held that exclusions precluding coverage for injuries sustained when the vehicle at issue is generally used for hire apply even when the vehicle is not carrying, and does not intend to carry, a passenger at the time of the accident,

---

[24] R. Doc. 24-3 at 5 (italics in original), 15.
[25] *Id.* at 4.
[26] R. Doc. 25 at 14-15.
[27] *Id.*

such as when a driver is headed home.  *See, e.g., Nationwide Assurance Co. v. Easley*, 960 A.2d 843 (Pa. Super. Ct. 2008) (citing *Ratush v. Nationwide Mut. Ins. Co.*, 619 A.2d 733 (Pa. Super. Ct. 1992)).  These courts recognize that it is reasonable to apply the for-hire exclusion regardless of whether the vehicle was carrying passengers at the time of the accident because there is more risk involved with a vehicle used generally for commercial purposes, than one used solely for private purposes.  *Ratush*, 619 A.2d at 391 (discussing *Rykill v. Franklin Fire Ins. Co.*, 80 Pa. Super. 492, 494 (1923) ("It is a matter of common knowledge that the premium rate of insurance upon automobiles used for commercial purposes is higher than on cars used for pleasure.  The obvious reason for this is the increased hazard.")).  These persuasive authorities lend support for this Court's finding that the insurance policy's definition of "private automobile" is unambiguous and does not include a taxicab, whether it had, or intended to have, a passenger at the time of the accident.

Therefore, this Court also holds that Taylor is not entitled to the auto/pedestrian death benefit and grants Mutual of Omaha's motion for partial summary judgment in this additional respect.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Mutual of Omaha's motion for partial summary judgment (R. Doc. 24) is GRANTED.

New Orleans, Louisiana, this 5th day of October, 2023.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE